NAZGOLE HASHEMI (SBN 291711)
nhashemi@legalaxxis.com
TANNAZ HASHEMI (SBN 296640)
thashemi@legalaxxis.com
LegalAxxis, Inc.
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
Telephone: (424) 249-3685
Facsimile: (424) 208-0622
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSH CAFÉ INC., *a California corporation and doing business as* POSH CAFÉ, <br><br> Plaintiff, <br><br> v. <br><br> AMGUARD INSURANCE COMPANY, *a Pennsylvania corporation*, and DOES 1-20, <br><br> Defendants. | Case No. 2:20-cv-08037-FMO-PVC <br> *[Assigned to Hon. Fernando M. Olguin, Dept: 6D]* <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> *[Filed concurrently with Plaintiff's Objections to Request for Judicial Notice]* <br><br> DATE: OCTOBER 8, 2020 <br> TIME: 10:00 AM <br> PLACE: 6D |

Plaintiff POSH CAFÉ INC., a California corporation doing business as POSH CAFÉ, hereby opposes and respectfully requests for the Court to deny Defendant's Motion to Dismiss in its entirety, or to otherwise provide leave to amend the Complaint.

///

///

///

i

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

## **TABLE OF CONTENTS**

I.    **INTRODUCTION**……………………………………………………1

II.   **STATEMENT OF THE CASE**……………………………………..……2

III.  **LEGAL STANDARD**……………………………………………...…3

IV.   **LAW AND ARGUMENT**……………………………………………...3

     A.    **The Court Should Deny Defendant's Motion To Dismiss Because Plaintiff Has Alleged A Basis For Coverage Under The Policy And Bad Faith And Unfair Conduct by Defendant.** ………………………3

          1.    The Virus Exclusion Is Inapplicable To Plaintiff's Claims Because COVID-19 Was Never Physically Present On The Premises Or The Predominant Cause Of The Business Closure..………………………4

          2.    Plaintiff's Damages Result From A Covered Cause Of Loss Because There Is Direct Physical Loss Or Damage.…………………………...7

          3.    Defendant's Failure To Investigate Constitutes Bad Faith And Unfair Conduct.……………………………………………………..12

V.    **CONCLUSION**……………………………………………………..13

# **TABLE OF AUTHORITIES**

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544 (2007)…………………………………………………………..3

*Canal Ins. Co. v. Underwriters at Lloyd's London*,

    435 F.3d 431 (3d Cir. 2006)..………………………………………………4

*Certain Underwriters at Lloyd's London v. Creagh*,

    2013 WL 3213345 (Penn. Dist. Ct. 2013) …………………………………5

*Conley v. Gibson*,

    355 U.S. 41 (1957)…………………………………………………………3

*Doe v. State Farm Fire and Casualty Company*,

    2015 WL 11083311 (N.H. 2015)…………………………………………..6

*Doe v. U.S.*,

    419 F.3d 1058 (9th Cir. 2005)……………………………………………...3

*East Quincy Services Dist. v. Continental Ins. Co.*,

    864 F.Supp. 976 (Cal. Dist. Ct. 1994)……………………………………...4, 5

*Egan v. Mutual of Omaha Ins. Co.*,

    169 Cal.Rptr. 691 (Cal. 1979)……………………………………………12

*Enesco Corp. v. Price/Costco, Inc.*,

    146 F.3d 1083 (9th Cir. 1998)……………………………………………...3

*Farmers Ins. Co. of Oregon v. Trutanich*,

    858 P.2d 1332 (Or. 1993)…………………………………………………..8

*Sentinel Management Co. v. New Hampshire Co.*,

    563 N.W.2d 296 (Min. App. 1997)………………………………………...8

*Filippo Indus., Inc. v. Sun Ins. Co. of New York*,

    88 Cal.Rptr.2d 881 (Cal. Ct. App. 1999)…………………………………12

*Garvey v. State Farm*,

    257 Cal.Rptr. 292 (Cal. 1989)……………………………………………...4

///

1    *Gilligan v. Jamco Dev. Corp.*,

2       108 F.3d 246 (9th Cir. 1997)…………………………………………….3

3    *Gregory Packaging Inc. v. Travelers Prop. & Cas.*,

4       U.S. Dist. LEXIS 165232 (Dist. N.J. 2014)………………………………..9

5    *Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.*,

6       97 Cal.Rptr.3d 568 (Cal. Ct. App. 2009)…………………………………12

7    *Hugh v. Potomac Ins.*,

8       18 Cal.Rptr. 650 (Cal. Ct. App. 1962)……………………………………...7

9    *Hughes v. Blue Cross of Northern*,

10      263 Cal.Rptr. 850 (Cal. Ct. App. 1989)…………………………………...12

11   *Jordan v. Allstate Ins. Co.*,

12      56 Cal.Rptr.3d 312 (Cal. Ct. App. 2007)…………………………………12

13   *Lambi v. American Family Mut. Ins. Co.*,

14      498 Fed.Appx. 655 (8th Cir. 2013)………………………………………...5

15   *Mariscal v. Old Republic Ins. Co.*,

16      50 Cal.Rptr.2d 224 (Cal. Ct. App. 1996)…………………………………12

17   *Mellin v. Northern Security Ins.*,

18      115 A.3d 799 (N.H. 2015)………………………………………………...10

19   *Murray v. State Farm*,

20      509 S.E.2d 1 (W.Va. 1998)………………………………………………...8

21   *National Ink and Stitch, LLC v. State Auto Property and Casualty Ins. Co.*,

22      435 F.Supp.3d 679 (N.H. Jan. 23, 2020)………………………………...10, 13

23   *Oregon Shakespeare Fest. Assn. v. Great American*,

24      U.S. Dist. LEXIS 74450 (Dist. Or. 2016)………………………………….10

25   *Port Authority of NY & NJ v. Affiliated FM*,

26      311 F.3d 226 (3d Cir. 2002)………………………………………………..9

27   *Reserve Ins. Co. v. Pisciotta*,

28      180 Cal.Rptr. 628 (Cal. 1982)…………………………………………...4, 6

iv

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

*Royal Globe Ins. Co. v. Whitaker*,

    226 Cal.Rptr. 435 (Cal. Ct. App. 1986)……………………………………………4

*Shade Foods, Inc., v. Innovative Products Sales,*

    93 Cal.Rptr.2d 364 (Cal. Ct. App. 2000)…………………………………………4, 12

*Stamm Theatres, Inc., v. Hartford Casualty Ins. Co*,

    113 Cal.Rptr.2d 300 (Cal. Ct. App. 2001)……………………………………………4

*Travco Ins. Co. v. Ward,*

    715 F.Supp.2d 699 (Dist. Va. 2010)…………………………………………..9

*Western Fire Ins. v. First Presbyterian Church,*

    437 P.2d 52 (Colo. 1968)……………………………………………...8

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

1

## I.    **INTRODUCTION**

2      This case arises out of Los Angeles Mayor Eric Garcetti's Public Order of March
3  15, 2020, which prohibited restaurants and retail food facilities that were otherwise open
4  to the public from serving food for consumption on the premises ("Public Order").
5  Complaint, ¶¶ 11-12; see Declaration of Chet Kronenberg, Exhibit A, Pg. 2. Plaintiff, a
6  café with onsite dining, has brought suit against Defendant for its denial of coverage for
7  loss of business income sustained as a direct result of the Public Order, which caused
8  Plaintiff to suspend its on-site dining operations. Complaint, ¶¶ 11-12.

9      Accordingly, the Virus Exclusion does not apply to this case. In cases where courts
10 have applied the Virus Exclusion to deny coverage, there was evidence of a virus,
11 bacteria, or microorganism *physically present* in the injured person or on the covered
12 premises. In this case, as of the date of the Public Order, "Posh Café was not aware of the
13 presence of any COVID-19 virus on its premises, and no employees or customer had
14 reported a COVID-19 infection." *Id.* at ¶ 11. Construing the Virus Exclusion in favor of
15 Plaintiff, as exclusions must be construed, it does not apply because COVID-19 was not
16 and is not the reason that Plaintiff closed onsite dining. To the extent the Court finds a
17 concurrence of different causes, the predominant cause, if not only cause, of Plaintiff
18 closing onsite dining was and is the Public Order. A mere causal connection to COVID-
19 19 is in itself insufficient to constitute predominant cause.

20     Moreover, the trend has been that courts are applying a more liberal interpretation
21 of the term "direct physical loss of or damage to" and finding it met where there is a
22 direct loss of use, utility, access, or function of the covered property, even without any
23 structural damage thereto. Construing the grant of coverage broadly to afford the greatest
24 possible protection to the insured, as grants of coverage must be construed, Plaintiff is
25 entitled to coverage. The Public Order directly caused Plaintiff to lose the property for its
26 intended purposes, i.e., onsite dining. In addition, that the Policy covers direct loss of use
27 as a result of the Public Orders is further corroborated by the very fact that the Public
28 Order is not listed or included in the Exclusions section, and that loss of "use" is

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

explicitly excluded under certain circumstances, none of which apply here.

Finally, Defendant's denial of the claim was unreasonable, as it did not conduct "even the slightest of an investigation" or fully inquire into possible bases to support the claim. *Id.* at ¶ 12. The persuasive authority that Defendant relies on came out months after its denial of Plaintiff's claim. The case law that was available at the time of the denial supported Plaintiff's understanding of the term "direct physical loss of or damage to," with the most recent case decided on January 23, 2020. To the extent the Policy is ambiguous, Defendant was required to interpret it in favor of Plaintiff.

For these reasons, Plaintiff respectfully requests for the Court to deny Defendant's Motion to Dismiss in its entirety, or otherwise provide leave to amend.

## II.   <u>STATEMENT OF THE CASE</u>

Plaintiff owns and operates a café with onsite dining in Los Angeles, California called "Posh Café." Complaint, ¶¶ 1 & 11. "Although COVID-19 was present in California by late January 2020, all businesses, including Posh Café, were allowed to remain open throughout February and the first half of March." *Id.* at ¶ 10. "On January 30, 2020, the World Health Organization ('W.H.O.') declared a public health emergency of international concern." *Id.* "Six weeks later, on March 11, 2020, the W.H.O. made the assessment that COVID-19 could be characterized as a pandemic." *Id.*   "Posh Café continued to remain open during this time." *Id.*

Later, following Mayor Garcetti's Public Order of March 15, 2020, which prohibited restaurants and retail food facilities that were otherwise open to the public from serving food for consumption on the premises, Posh Café "close[d] its onsite dining services, resulting in a loss of functional use of its premises and an interruption of its business." *Id.* at ¶ 11. As of the date of the Public Order, "Posh Café was not aware of the presence of any COVID-19 virus on its premises, and no employees or customer had reported a COVID-19 infection." *Id.* The Order was the predominant cause of the suspension of Posh Café's operation. *Id.* Plaintiff submitted a claim for loss of business

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

income to Defendants for the help and protection Plaintiff had been promised in the insurance policy ("Policy"), but Defendants rejected the claim. *Id.* at ¶ 12. However, Plaintiff contends that the Policy, which has been attached in full to the Complaint as Exhibit 1, covers its claims and that Defendants rejected the claim in bad faith without even the slightest of an investigation. *Id.* at ¶ 12. This resulted in a complete and utter violation of California insurance laws, regulations, and standards. *Id.*

Plaintiff has brought suit for breach of contract and breach of the implied covenant of good faith and fair dealing, and seeks general, consequential, and punitive damages, prejudgment interest, attorneys' fees, and costs. *Id.* at Prayer for Relief, ¶¶ 1-8.

## III.   LEGAL STANDARD

A complaint will survive a motion to dismiss if it contains sufficient factual matters to state a cause of action that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a motion to dismiss, all allegations of material fact, and reasonable inferences therefrom, are accepted as true. *Id.* at 555; *Doe v. U.S.*, 419 F.3d 1058, 1062 (9th Cir. 2005). Motions to dismiss are viewed with disfavor and dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). It is improper to inquire into the adequacy of evidence in ruling on a motion to dismiss. *Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims . . ." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## IV.   LAW AND ARGUMENT

**A.   The Court Should Deny Defendant's Motion To Dismiss Because Plaintiff Has Alleged A Basis For Coverage Under The Policy And Bad Faith And Unfair Conduct by Defendant.**

California law requires that grants of coverage be interpreted *broadly* to afford the

3

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

greatest possible protection to the insured, while exclusions are interpreted *narrowly* and against the insurer. See *Shade Foods, Inc., v. Innovative Products Sales,* 93 Cal.Rptr.2d 364, 382 (Cal. Ct. App. 2000); *Reserve Ins. Co. v. Pisciotta,* 180 Cal.Rptr. 628, 632 (Cal. 1982). If a policy provision is capable of two or more reasonable interpretations, then it is considered ambiguous. *Stamm Theatres, Inc., v. Hartford Casualty Ins. Co*, 113 Cal.Rptr.2d 300, 305 (Cal. Ct. App. 2001). Ambiguities must be resolved against the insurance company/drafter of the agreement and in favor of the insured. *Reserve Ins. Co. v. Pisciotta,* 180 Cal.Rptr. at 632; *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435–36 (3d Cir. 2006).

Moreover, once the insured shows that an event falls within the scope of basic coverage under the policy, the burden of proof is on the insurer to prove that a claim is specifically excluded. *Royal Globe Ins. Co. v. Whitaker*, 226 Cal.Rptr. 435, 437 (Cal. Ct. App. 1986). To the extent the court finds a concurrence of different causes, the "efficient proximate cause" governs coverage. *Garvey v. State Farm*, 257 Cal.Rptr. 292, 295-96 (Cal. 1989). The courts use the term "efficient proximate cause" to mean the "predominant cause." *Id.* at 296. This term is not to be confused with the phrase "moving cause" or "triggering cause," as these are not the appropriate analyses. *Id.*

In the present case, Plaintiff's Complaint is not subject to dismissal because it sufficiently states causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. The Virus Exclusion does not apply and the "direct physical loss of or damage to" requirement has been met. To the extent Defendant cites to and requests judicial notice of rulings in other cases that arose following the business closure orders, these are only persuasive authority and not by any means binding on this Court.

1. The Virus Exclusion Is Inapplicable To Plaintiff's Claims Because COVID-19 Was Never Physically Present On The Premises Or The Predominant Cause Of The Business Closure.

In *East Quincy Services Dist. v. Continental Ins. Co.*, 864 F.Supp. 976 (Cal. Dist.

4

Ct. 1994), the District sold a residential lot contaminated by E. coli and other pollutants to a family, who became seriously ill and then filed suit against the District. *Id.* at 977-78. The District requested defense and indemnification from its insurance carrier, which issued a denial based on the Pollution Exclusion. *Id.* The Court reasoned that the family's personal injuries resulted from pollutants that were actually present on the residential lot and therefore defense and indemnification were properly denied. *Id.*

In *Certain Underwriters at Lloyd's London v. Creagh*, 2013 WL 3213345 (Penn. Dist. Ct. 2013), which was not reported in the Federal Supp., the insurance carrier sought declaratory judgment that damage to third party's apartment arising from decomposition of a dead body was not covered by insured's policy. *Id.* at *2. The owner of an apartment building discovered the two-week old dead body of a tenant who had collapsed over a toilet and whose bodily fluids had seeped into the bathroom floor, contaminating the first-floor bathroom directly below and causing a powerful foul odor to pervade the unit. *Id.* Following instruction from the police department, the building owner retained companies to sanitize and remediate the building. *Id.* The Court reasoned that for the Microorganism Exclusion to apply, the insurer "must produce evidence that bacteria or other microorganisms were present in [the deceased's] bodily fluids, and that they caused the damages at issue." *Id.* at *3. The Court also reasoned that for the Seepage and/or Pollution and/or Contamination Exclusion to apply, the insured "must present evidence that the bodily fluids caused damage by 'seepage,' 'pollution,' or 'contamination,' and that the fluids themselves are regulated as hazardous materials." *Id.* at *4.

In *Lambi v. American Family Mut. Ins. Co.*, 498 Fed.Appx. 655 (8th Cir. 2013), which was not selected for publication in the Federal Reporter, the insured sued the homeowner's insurance carrier after it refused to defend and indemnify the insured against suit by a third party who became infected with HIV after sexual activity with the insured. *Id.* at 655-56. The Court held that the policy excluded bodily injury from a communicable disease or virus transmitted by the insured to any other person, as well as bodily injury arising out of abuse, which included sexual contact. *Id.*

In *Doe v. State Farm Fire and Casualty Company*, 2015 WL 11083311 (N.H. 2015), which was not reported in the Atl. Rptr., the plaintiff sued the insurance carrier after contracting herpes following sexual activity with insured. *Id.* at *1-2. The Court disagreed with the plaintiff's argument that herpes did not fall within the policy exclusion regarding communicable disease, which Plaintiff asserted meant "easily contracted" disease, such as common colds and flues. *Id.* The Court reasoned that a casual reading of the exclusion by a reasonable person pointed to the exclusion not being restricted to common viruses or those that were easily contracted. *Id.*

In each of the foregoing cases, there was evidence of a virus, disease, pollutant, bacteria, or microorganism actually causing bodily injury to a person or actually causing damage to the premises. In other words, there was evidence that the virus was *physically present* in the person or on the premises. The Virus Exclusion must be interpreted narrowly. *Reserve Ins. Co. v. Pisciotta,* 180 Cal.Rptr. at 632. Based on the foregoing cases, the exclusion bars only situations where the injury resulted from the actual, physical presence of the virus, bacteria, or pollutant on the premises. To the extent the Virus Exclusion is capable of two or more reasonable interpretations, it is ambiguous and must be construed in favor of the insured and against the insurer. *Id.* at 807.

Here, the Virus Exclusion does not apply to Plaintiff's case based on the allegation in the Complaint that, as of the date of the Public Order, "Posh Café was not aware of the presence of any COVID-19 virus on its premises, and no employees or customer had reported a COVID-19 infection." Complaint, ¶ 11. The present case is distinguishable from the foregoing cases because, in those cases, there was evidence that the virus was physically present in the person or on the premises. Contrarily, here, the presence of COVID-19 on the premises was not the reason for the cessation of onsite dining at Posh Café. Indeed, Posh Café offered onsite dining until the Public Order and continued, although at a smaller capacity, once the Public Order was lifted. *See id.* ¶¶ 10, 11, 12. Construing the Virus Exclusion in favor of Plaintiff, it does not apply to the case because COVID-19 was not and is not the reason that onsite dining at the café closed.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

Moreover, to the extent the Court finds a concurrence of different causes, the efficient proximate cause, i.e., predominant cause, governs coverage. *Garvey v. State Farm,* 48 Cal.3d. at 404. As explained above, the predominant cause, if not only cause, of Plaintiff closing onsite dining was and is the Public Order. For Defendant to even begin an attempt to show that COVID-19 had any causal connection to the closure of Plaintiff's business, the Complaint would have to include allegations that Plaintiff closed its business before the Public Order or continued to remain closed after the Public Order was lifted. Defendant has not and cannot make any such showing. Even so, a mere causal connection to COVID-19 is in itself insufficient to constitute predominant cause.

For these reasons, the Virus Exclusion does not apply to Plaintiff's case and must not be used as a basis to dismiss the Complaint.

2.    Plaintiff's Damages Result From A Covered Cause Of Loss Because There Is Direct Physical Loss Or Damage.

The term "direct physical loss of or damage to" is not typically defined in insurance policies, and has been subject to various interpretations by courts nationwide. While some courts have applied a more narrow interpretation of the term to mean a demonstrable tangible structural change to the covered property, the trend has been that courts are applying a more liberal interpretation and finding a "direct physical loss or damage" where there is a direct loss of use, utility, access, or function of the covered property, even though there is no structural damage thereto.

In *Hugh v. Potomac Ins.*, 18 Cal.Rptr. 650 (Cal. Ct. App. 1962), the dwelling was left uninhabitable after a portion of the soil under the structure gave way to a landslide. *Id.* at 655. The insurer denied coverage contending that the policy did not insure the earth below the dwelling and that the dwelling itself did not suffer "tangible injury." *Id.* In finding that the policy did provide coverage, the Court stated, "In the case at bar, [the insureds] were issued a policy insuring them against all physical loss to their 'dwelling' or 'dwelling building'." *Id.* The Court reasoned that "[c]ommon sense" required that a policy should *not* be interpreted to deny coverage unless "some tangible injury to the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

physical structure itself could be detected." *Id.* Rather, the fact that the dwelling building was "rendered completely useless to its owners" was sufficient to trigger coverage. *Id.*

In *Western Fire Ins. v. First Presbyterian Church,* 437 P.2d 52 (Colo. 1968), a church was rendered uninhabitable due to gasoline that accumulated under and around the structure. *Id.* at 54. Although the policy insured against risks of direct physical loss, the insurer argued a mere "loss of use" was not a "direct physical loss" and denied coverage. *Id*. In finding that the policy did provide coverage, the Court stated that, "because of the accumulation of gasoline around and under the church building the premises became so infiltrated and saturated as to be uninhabitable," further use of the building became "highly dangerous." *Id.* at 55. The Court reasoned that all of this "equate[d] to a direct physical loss within the meaning of that phrase as used by the Company in its Special Extended Coverage Endorsement insuring against 'all other risks.'" *Id.*

In *Farmers Ins. Co. of Oregon v. Trutanich,* 858 P.2d 1332 (Or. 1993), the court found that the odor of a methamphetamine operation by tenants of an insured property constituted "direct physical loss" even though there was no structural damage. *Id.* at 1336. The Court reasoned that the cost of removing the odor constituted a direct physical loss because "the odor produced by the methamphetamine lab had infiltrated the house." *Id.*

In *Sentinel Management Co. v. New Hampshire Co.,* 563 N.W.2d 296 (Min. App. 1997), the contamination caused by the release of asbestos fibers from asbestos materials in a structure constituted a "direct physical loss." *Id.* at 300. The insurer argued that asbestos contamination, absent structural damage, could not constitute "direct physical loss" under the policy. *Id.* The Court disagreed, finding that the contamination by asbestos was a direct, physical loss to property under an all-risk insurance policy. *Id.* The Court reasoned that, even where there is a no "tangible injury to the physical structure of a building, a building's function may be seriously impaired or destroyed and the property rendered useless by the presence of contaminants." *Id.*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

In *Murray v. State Farm,* 509 S.E.2d 1 (W. Va. 1998), several large boulders and rocks fell off the highwall onto three homes. *Id.* at 15. While two homes suffered extensive property damage and one did not, all three were compelled to be evacuated because of the possibility that additional rocks could fall. *Id.* The insurer denied coverage for the one home that did not suffer property damage, arguing "the policies do not cover any losses occasioned by the potential damage that could be caused by future rockfalls." *Id*. at 16. The Court reasoned that losses covered by the policies included "those rendering the insured property unusable or uninhabitable," even in "the absence of structural damage to the insured property." *Id.* at 17.

In *Port Authority of NY & NJ v. Affiliated FM,* 311 F.3d 226 (3d Cir. 2002), the Court found that, where the level of asbestos presence is significant enough to render the structure "uninhabitable and unusable," then there is a "physical loss." *Id.* at 236. The Court reasoned, "When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner." *Id.* "However, if asbestos is present in components of a structure, but is not in such form or quantity as to make the building unusable, the owner has not suffered a loss." *Id.* Where a "structure continues to function – it has not lost its utility." *Id*.

In *Travco Ins. Co. v. Ward,* 715 F.Supp.2d 699 (Dist. Va. 2010), toxic gases from Chinese drywall permeating the insured structure constituted a "direct physical loss." *Id.* at 709. The Court founds that the defendant's home was "rendered uninhabitable by the toxic gases released by the Chinese Drywall" and was therefore covered by the policy. *Id*.

In *Gregory Packaging Inc. v. Travelers Prop. & Cas.,* U.S. Dist. LEXIS 165232 (Dist. N.J. 2014), the build-up of released ammonia in a packaging facility rendered the facility "physically unfit for normal human occupancy and continued use until the ammonia was sufficiently dissipated." The insurer argued there was no "physical loss or damage" because the structure did not suffer any demonstrable alteration. *Id.* In finding that the policy did provide coverage, the Court reasoned, "while structural alteration provides the most obvious sign of physical damage . . . property can sustain physical loss

or damage without experiencing structural alteration." *Id.*

In *Mellin v. Northern Security Ins.,* 115 A.3d 799 (N.H. 2015), cat urine odor caused "physical loss" to the insured property. *Id.* at 805. The Court reasoned, "Evidence that a change rendered the insured property temporarily or permanently unusable or uninhabitable may support a finding that the loss was a physical loss to the insured property" *Id.*

In *Oregon Shakespeare Fest. Assn. v. Great American,* U.S. Dist. LEXIS 74450 (Dist. Or. 2016), an indoor/outdoor theater suffered smoke damage. *Id.* at 11. The insurer denied coverage claiming that the structure did not suffer "physical loss or damage" since there was no alteration to the structure itself. *Id.* The Court disagreed that, "in order to be 'physical,' the loss or damage must be structural to the building itself" where the insurer "does not provide any evidence from within the policy to show that the plain meaning of the term 'physical' includes such a limitation." *Id.* The Court found that "the smoke that infiltrated the theater caused direct property loss or damage by causing the property to be uninhabitable and unusable for its intended purpose." *Id.* at 19.

In *National Ink and Stitch, LLC v. State Auto Property and Casualty Ins. Co.,* 435 F.Supp.3d 679 (N.H. Jan. 23, 2020), the insured brought an action against the insurer to recover under a businessowners policy for damage to its computer system in a ransomware attack. *Id.* at 681. The Court rejected the insurer's argument that the losses were not caused by "direct physical loss of or damage" to the insured property. *Id.* at 685. The Court found that the insured's damage to the computer system itself, despite its residual ability to function, was covered under the policy. *Id.* at 686. Relying on other cases, the Court reasoned, "The more persuasive cases are those suggesting that loss of use, loss of reliability, or impaired functionality demonstrate the required damage to a computer system, consistent with the 'physical loss or damage to' language in the Policy." *Id.*

Here, construing the grant of coverage for "direct physical loss of or damage to" broadly afford the greatest possible protection to the insured, Plaintiff is entitled to

coverage. In accordance with the foregoing cases and the liberal interpretation that they have followed in defining the term, Plaintiff's direct loss of functional use of the premises for onsite dining services is sufficient to trigger coverage. The Policy covers "direct physical losses of" the covered property. The Public Order directly caused Plaintiff to lose the property for its intended purposes, i.e., onsite dining. There is no need for Plaintiff to show a structural change or demonstrable alternation to the premises. Even so, in the Public Order, Mayor Garcetti specifically states, "I hereby declare the following to be necessary for the protection of life and *property* . . ." Declaration of Chet Kronenberg, Exhibit A, Pg. 1 [emphasis added].

Moreover, that the Policy covers direct loss of functional use as a result of the Public Orders is further corroborated by the very fact that Public Order is not included in the Exclusions section, and that loss of "use" is explicitly excluded under certain circumstances. For example, the "Ordinance Or Law" section excludes, "The enforcement of any ordinance or law: (a) Regulating the construction, use or repair of any property; or (b) Requiring the tearing down of any property, including the cost of removing its debris." Complaint, Exhibit 1, Pg. 15 of 48. The Policy specifically excludes ordinances or laws regulating the construction, use, repair, or tearing down of property. First, the fact that this exclusion includes the term "use" of property signifies that the "direct physical loss of or damage to" requirement can be met via loss of use of property under non-excluded circumstances. Second, although the Public Order did directly lead to a loss of functional use of the property for onsite dining, it did not directly or indirectly *regulate* use of the property. The Public Order does not regulate construction, use, repair, or tearing down of property and is therefore not excluded under the Policy.

Further, the "Governmental Action" section excludes, "Seizure or destruction of property by order of governmental authority." *Id.* The Policy specifically excludes government orders of seizure or destruction of property, but does not exclude other types of government orders. Accordingly, the Public Order is not excluded by the Policy.

For these reasons, the Policy covers Plaintiff's claim and must not be used as a

1 | basis to dismiss the Complaint.

2 |         3.    <u>Defendant's Failure To Investigate Constitutes Bad Faith And Unfair</u>

3 |             <u>Conduct.</u>

4 |     To establish a "bad faith" claim in first party cases, it must be shown that the

5 | insurer's denial of benefits was unreasonable or without proper cause. *Jordan v. Allstate*

6 | *Ins. Co.*, 56 Cal.Rptr.3d 312, 319 (Cal. Ct. App. 2007); *Mariscal v. Old Republic Ins.*

7 | *Co.*, 50 Cal.Rptr.2d 224, 227 (Cal. Ct. App. 1996). "For the insurer to fulfill its obligation

8 | not to impair the right of the insured to receive the benefits of the Agreement . . . it is

9 | essential that an insurer fully inquire into possible bases that might support the insured's

10 | claim." *Egan v. Mutual of Omaha Ins. Co.*, 169 Cal.Rptr. 691, 695-96 (Cal. 1979);

11 | *Hughes v. Blue Cross of Northern*, 263 Cal.Rptr. 850, 857 (Cal. Ct. App. 1989). "[A]n

12 | insurer cannot reasonably and in good faith deny payments to its insured without

13 | thoroughly investigating the foundation for its denial." *Egan v. Mutual of Omaha Ins.*

14 | *Co.*, 169 Cal.Rptr. at 695-96. Adequacy of investigation is "[a]mong the most critical

15 | factors bearing on the insurer's good faith." *Shade Foods, Inc. v. Innovative Products*

16 | *Sales & Marketing, Inc.,* 93 Cal.Rptr.2d at 386.

17 |     Moreover, where coverage turns on a legal issue, other courts' opinions may be

18 | probative of the reasonableness of the insurer's position. *Filippo Indus., Inc. v. Sun Ins.*

19 | *Co. of New York*, 88 Cal.Rptr.2d 881, 888 (Cal. Ct. App. 1999). However, such

20 | reasonableness must be evaluated as of the time the decision was made and subsequent

21 | court opinions should not be considered. *Id.* In addition, "if there is an ambiguity in an

22 | insurance policy provision, reasonableness dictates that the insurance company must

23 | interpret the ambiguity in favor of the policyholder." *Griffin Dewatering Corp. v.*

24 | *Northern Ins. Co. of N.Y.*, 97 Cal.Rptr.3d 568, 595 (Cal. Ct. App. 2009).

25 |     Here, denial of the claim was unreasonable and thus a breach of the implied

26 | covenant of good faith and fair dealing. First, as the Complaint alleges, there was not

27 | "even the slightest of an investigation" done prior to denial of Plaintiff's claim, which is a

28 | complete and utter violation of California insurance law, regulations, and standards.

Complaint, ¶ 12. Defendant did not fully inquire into all possible bases to support the claim. Because adequacy of investigation is one of the most critical factors bearing on good faith, Defendant's failure to investigate alone is sufficient to show unreasonable, unfair, and bad faith conduct.

Second, although Defendant cites to four cases that denied similar claims in the context of COVID-19 business closures, the earliest of these rulings was August 13, 2020. See Motion to Dismiss, 7:9-28. However, Defendant denied the claim on April 29, 2020, which is much earlier than the first ruling. While this date is absent from the Complaint, it could be added upon leave to amend should the Court deem it necessary.

Third, based on the case law that was available at the time of the denial, and as described herein, Defendant did not have a reasonable, fair, or good faith basis to deny the claim. The cases cited by Plaintiff herein in support of the term "direct physical loss of or damage to" range from 1962 to 2020, with the most recent opinion issued on January 23, 2020 in *National Ink and Stitch, LLC v. State Auto Property and Casualty Ins. Co.,* 435 F.Supp.3d 679. Accordingly, to the extent the Policy is ambiguous, reasonableness dictates that Defendant was required to interpret it in favor of Plaintiff.

For these reasons, there are sufficient allegations to show that Defendant engaged in bad faith and unfair conduct in breach of the implied covenant in Plaintiff's Policy.

## V.     CONCLUSION

For these reasons, Plaintiff respectfully requests for the Court to deny Defendant's Motion to Dismiss, or to otherwise provide leave to amend the Complaint.

DATED: September 17, 2020            **LEGALAXXIS, INC**.

/s/ Nazgole Hashemi

Nazgole Hashemi
Tannaz Hashemi
Attorneys for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES